# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 17, 2024

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810



Appeal Number:  23-12414-DD
Case Style: Andrew Horace v. ARIA
District Court Docket No: 9:22-cv-81766-AMC

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Clerk's Office Phone Numbers
| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

Enclosure(s)

MDT-1 Letter Issuing Mandate

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12414

_____

ANDREW HORACE,

Plaintiff-Appellant,

*versus*

ARIA,
(Addiction Recovery Institute of America)
C/O Shawn Leon,

Defendant-Appellee,

EVERNIA HEALTH CENTER LLC, et al.,

Defendants.

2                                                        23-12414

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:22-cv-81766-AMC

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion is-
sued on this date in this appeal is entered as the judgment of this
Court.

Entered: March 19, 2024

For the Court: DAVID J. SMITH, Clerk of Court

ISSUED AS MANDATE:  April 17, 2024

[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12414

Non-Argument Calendar

_____

ANDREW HORACE,

                                                 Plaintiff-Appellant,

*versus*

ARIA,
(Addiction Recovery Institute of America)
C/O Shawn Leon,

                                                 Defendant-Appellee,

EVERNIA HEALTH CENTER LLC, et al.,

2                        Opinion of the Court                    23-12414

                                                                Defendants.

                        _____

                Appeal from the United States District Court
                   for the Southern District of Florida
                   D.C. Docket No. 9:22-cv-81766-AMC

                        _____

Before BRASHER, ABUDU and HULL, Circuit Judges.

PER CURIAM:

        Andrew Horace appeals *pro se* the dismissal with prejudice
of his amended complaint alleging claims of race and gender
discrimination under Title VII of the Civil Rights Act of 1964 ("Title
VII") and the Florida Civil Rights Act ("FCRA") against his former
employer Addiction Recovery Institute of America, LLC ("ARIA").
The district court dismissed Horace's gender discrimination claims
for failure to exhaust administrative remedies and his race
discrimination claims for failure to state a claim under Federal Rule
of Civil Procedure 12(b)(6).

        After review, we affirm the dismissal of Horace's gender
discrimination claims for lack of exhaustion.  As to Horace's race
discrimination claims, however, we conclude the district court
erred in dismissing those claims at the pleading stage for failure to
plead a prima facie case under the *McDonnell Douglas* evidentiary
framework.  Here, Horace's amended complaint states facially
plausible claims of race discrimination under Title VII and the

FCRA, and thus we reverse the district court's dismissal of those claims and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A.    Allegations in Amended Complaint

According to the operative *pro se* amended complaint, from December 2021 until February 2022, Horace, who is black, worked at ARIA as a behavior health technician. Horace was fully qualified for his position and was praised by ARIA's hiring manager and the lead technician for his work performance.

Horace alleged that from the outset of his employment, ARIA treated black employees differently than non-black employees in similar situations as to "their wages" by "changing [black employees'] pay-rate multiple times." One black employee, Yolanda, told Horace she "received disparate treatment in her wages." Horace learned from another black employee, Tomasina, that other black employees had "voluntarily separated due to disparate treatment in wages performed by [ARIA]." Horace alleged that Tomasina's statements were "proven true and correct, as it happened to [Horace]" as well.

Specifically, the amended complaint alleged that ARIA twice changed Horace's pay rate without his knowledge. As a result, Horace worked "at a final pay-rate change of 0.1875," which was

"significantly less than his non-black counterparts."[1]   Horace brought the payroll issue to the attention of ARIA's hiring manager Jefferey Mann, its payroll director Cliff Churchill, and its owner Shaw Leon, and all three "refused to correct the issue at hand while [Horace] was physically employed."   ARIA's payroll director allegedly lied to Horace, saying the "pay-roll issue [was] correct." Horace had to retain an attorney "to get his wages back," and ARIA "remained idle" until his attorney got involved.

Meanwhile, white employees were not subjected to pay-rate changes without their consent or having to "jump through hoops in order to get their wages back."   As an example, Horace identified a "non-black employee," Betsy Galicia, who never had her pay rate changed while working at ARIA.   Horace alleged that the change in his pay rate was not merely a payroll error, but an "intentional act of disparate treatment towards black employees," and that ARIA's claims to the contrary were "dishonest" and "a pretextual defense."   Horace alleged that he "suffered adverse employment actions due to his race; resulting in changing his pay-rate twice without his knowledge."

---

[1] It is not entirely clear from the *pro se* amended complaint what Horace means by "a pay-rate change of 0.1875," as it does not further quantify the effect of this change.   However, the amended complaint describes this pay rate as "disgraceful" and states that "no employee in America works at that rate!"   On appeal, ARIA suggests Horace meant "a change to $0.1875 per hour."   At a minimum, these allegations, liberally construed, assert that Horace suffered a more than de minimis pay cut.

Based on these factual allegations, the amended complaint asserted claims of race discrimination in violation of Title VII and the FCRA (Counts 1 and 3) and gender discrimination in violation of Title VII and the FCRA (Counts 2 and 4). Among other things, Horace sought compensatory and punitive damages, and reinstatement "to the position at the rate of pay and with the full benefits [he] would have had" if ARIA had not discriminated against him, or "in lieu of reinstatement, [an] award [of] front pay."

## B.   Motion to Dismiss

ARIA filed a motion to dismiss the amended complaint for failure to state a claim of race discrimination. ARIA also argued that Horace's gender discrimination claims were barred because they fell outside the scope of his charge of discrimination and attached a copy of that charge filed with the Palm Beach County Office of Equal Opportunity ("PBCOEO").

On June 16, 2023, the district court granted ARIA's motion and dismissed Horace's amended complaint. For Horace's gender discrimination claims, the district court concluded Horace had failed to exhaust his administrative remedies, as his discrimination charge, filed with the PBCOEO, was devoid of allegations of gender discrimination. The district court further found that because the alleged sex discrimination occurred in February 2022—the last date Horace alleged he worked at ARIA—which was "more than a year ago," any attempt to file a charge for sex discrimination "would be time-barred."

For Horace's race discrimination claims, the district court concluded that Horace's amended complaint failed to establish two elements of the prima facie case for intentional race discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)—that he suffered an adverse employment action and that ARIA treated similarly situated employees of a different race more favorably.

The district court dismissed the amended complaint with prejudice because it had already given Horace the opportunity to cure deficiencies in his original complaint but the amended complaint remained deficient.  The district court further noted that a new action would be untimely.

## II.  DISMISSAL OF GENDER DISCRIMINATION CLAIMS

Before filing an action in federal court, a Title VII plaintiff in a deferral state such as Florida must file an administrative charge of discrimination within 300 days after the alleged unlawful employment practice occurred.  42 U.S.C. § 2000e-5(e)(1); *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002).  Similarly, a plaintiff seeking to file civil suit under the FCRA must file a complaint with the Florida Commission on Human Relations, another appropriate state entity, or the Equal Employment Opportunity Commission ("EEOC") within 365 days of the alleged FCRA violation.  Fla. Stat. §§ 760.02(2), 760.11(1); *Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 894 (Fla. 2002).

"Because of that exhaustion requirement, 'a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of

discrimination." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022) (quoting *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004)). In "determining what can reasonably be expected to grow out of an EEOC charge," the facts alleged in the charge matter more than the legal theory. *Id.* While "judicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, . . . allegations of new acts of discrimination are inappropriate." *Gregory*, 355 F.3d at 1279-80 (quotation marks omitted). We review *de novo* the dismissal of a claim for failure to exhaust administrative remedies. *See id.* at 1280.

Here, the district court did not err in dismissing Horace's gender discrimination claims under Title VII and the FCRA for failing to exhaust them administratively. In his charge of discrimination filed with the PBCOEO, Horace checked the box indicating that he was alleging discrimination based on race. And, in detailing the "particulars" in a separate box on the form, Horace stated he believed he was discriminated against based on his race because ARIA treated him and other black employees differently than Horace's white co-worker as to the "terms and conditions of [ARIA's] rules and regulation[s]." Horace's charge made no mention of gender at all, much less allege gender discrimination.

Further, Horace attached to his amended complaint: (1) an email from a manager at the state agency indicating that the agency was investigating Horace's "allegation of discrimination based on race," and (2) an email from Horace advising the manager that the "employee of a different race" referred to in his charge was a

behavior health technician named Betsy, but that he did not know her last name.

Because Horace's charge was limited to factual allegations of race discrimination, he was precluded from asserting claims of gender discrimination for the first time in his amended complaint. *See id.* at 1279-80.   Additionally, these claims were properly dismissed with prejudice, as the time for filing a charge of gender discrimination under either Title VII or the FCRA, 300 days and 365 days respectively, had long since expired by the time of the district court's June 16, 2023 dismissal order.

## III.   DISMISSAL OF RACE DISCRIMINATION CLAIMS

Horace argues that the district court did not apply the correct legal standard when it dismissed his race discrimination claims for failure to state a claim under Rule 12(b)(6), and that, under the correct standard, his amended complaint pled sufficient facts to survive ARIA's motion to dismiss.

We review a district court's order granting a motion to dismiss for failure to state a claim *de novo*.   *EEOC v. STME, LLC*, 938 F.3d 1305, 1313 (11th Cir. 2019).   *Pro se* pleadings are construed liberally and held to "less stringent standards" than counseled pleadings.   *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (quotation marks omitted).   "Nevertheless, we cannot act as de facto counsel or rewrite an otherwise deficient pleading in order to sustain an action."   *Id.*

## A.      Rule 12(b)(6) Dismissals

Under Federal Rule of Civil Procedure 8, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The complaint must include factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim for relief).

In ruling on a Rule 12(b)(6) motion, a district court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs." *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678. "A claim is facially plausible when the plaintiff pleads sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *STME, LLC*, 938 F.3d at 1313 (quotation marks omitted). Plausible facts "raise a reasonable expectation that discovery could supply additional proof of [a defendant's] liability." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

## B.    Pleading Title VII Discrimination Claims

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of his race or sex.  42 U.S.C. § 2000e-2(a)(1).  Similarly, the FCRA makes it unlawful for an employer to "discharge . . . any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex."  Fla. Stat. § 760.10(1)(a).  Discrimination claims brought under Title VII and the FCRA are analyzed under the same framework.  *See, e.g.*, *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 n.6 (11th Cir. 2015).

The Supreme Court has held that an employment discrimination plaintiff need not plead specific facts establishing a prima facie case under the burden-shifting framework established in *McDonnell Douglas*.[2]  *Swierkiewicz*, 534 U.S. at 508, 510-12.  Applying *Swierkiewicz*, this Court explained in *Surtain* that:

> [t]o state a race-discrimination claim under Title VII, a complaint need only provide enough factual matter

---

[2] Under the *McDonnell Douglas* burden-shifting framework, a Title VII plaintiff relying on circumstantial evidence to survive summary judgment must first present evidence of a prima facie case of racial discrimination, including that: (1) he belongs to a protected class; (2) was qualified to do the job; (3) was subjected to adverse employment action; and (4) his employer treated similarly situated employees outside his class more favorably.  *Crawford v. Carroll*, 529 F.3d 961, 970, 975-76 (11th Cir. 2008).

(taken as true) to suggest intentional race discrimination.  The complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case.  This is because *McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement.

*Surtain*, 789 F.3d at 1246 (quotation marks and citations omitted).

Nevertheless, a Title VII plaintiff, like any other plaintiff, must still satisfy the plausibility standard set forth in *Twombly* and *Iqbal*.  *See id*.  To do so, an employment discrimination complaint must provide enough factual allegations that, taken as true, "plausibly suggest that the plaintiff suffered an adverse employment action due to intentional racial discrimination."  *Id*. at 1246.[3]  The complaint must satisfy the plausible-on-its-face standard, and the allegations must be sufficient to raise a right to relief above the speculative level.  *See Edwards*, 602 F.3d at 1301.

## C.    Dismissal of Horace's Race Discrimination Claims

Here, in the "Legal Standard" section of its dismissal order, the district court recited the correct *general* standard for Rule 12(b)(6) dismissals under *Twombly* and *Iqbal*.  In its analysis of Horace's race discrimination claims, however, the district court recited the elements of a prima facie case of race discrimination

---

[3] An adverse employment action is "not only an element of [*McDonnell Douglas*'s] prima facie case," but also an element "of the claim itself."  *Holland v. Gee*, 677 F.3d 1047, 1056 (11th Cir. 2012).  Therefore, a Title VII plaintiff must allege facts showing he suffered an adverse employment action to state a facially plausible disparate treatment claim of discrimination.

under the *McDonnell Douglas* burden-shifting framework and concluded that Horace's amended complaint "fail[ed] to establish two of these elements." The district court further explained that Horace had failed to allege facts from which the court could infer that he suffered an adverse employment action or that ARIA treated similarly situated employees more favorably than him.

The district court determined Horace's allegations that ARIA changed his pay rate did not establish an adverse employment action because ARIA eventually returned his lost wages. The district court noted Horace's allegations that Betsy Galicia, a non-black employee, did not experience pay-rate changes. The district court concluded, however, that the amended complaint "provides no information from which the Court can infer that Ms. Galicia is similarly situated to Plaintiff in all material respects." The district court cited *Lewis v. City of Union City*, a summary judgment case in which this Court addressed what "sorts of similarities" are needed to satisfy the "all-material-respects" standard of the fourth element of a prima facia case under *McDonnell Douglas*. 918 F.3d 1213, 1227-1229 (11th Cir. 2019).

The district court erred by requiring Horace to plead specifically enough to establish a prima facie case of race discrimination under *McDonnell Douglas*. *See Swierkiewicz*, 534 U.S. at 508, 510-12; *Surtain*, 789 F.3d at 1246. Instead, the district court should have evaluated whether the factual allegations in Horace's *pro se* amended complaint, liberally construed and taken as true, "plausibly suggest that [Horace] suffered an adverse employment

action due to intentional race discrimination." *See Surtain*, 789 F.3d at 1246.

Horace's amended complaint, liberally construed, alleged that: (1) ARIA changed and lowered the rate of pay of black employees, including Horace, without their knowledge or consent, but did not change the rate of pay for non-black employees, such as Betsy Galicia; (2) when Horace complained to ARIA's managers about the changes to his rate of pay, they refused to correct his pay rate while he was employed there and falsely told him that his pay rate was correct; and (3) Horace was able to obtain the full wages he was due only after he voluntarily separated from ARIA and retained an attorney.

These factual allegations, taken as true, are sufficient to suggest that Horace suffered an adverse employment action due to intentional race discrimination. To the extent the district court concluded Horace failed to allege an adverse employment action, both Title VII and the FCRA prohibit discrimination with respect to compensation. *See* 42 U.S.C. § 2000e-2(a)(1); Fla. Stat. § 760.10(1)(a). This Court has said that adverse employment actions include actions that "affect continued employment or pay" including "pay raises or cuts." *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1266 (11th Cir. 2021); *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020). That Horace alleged that ARIA eventually repaid his lost wages after he resigned and hired a lawyer does not mean he did not suffer an adverse employment action. *See Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008)

(concluding that an employee who was temporarily deprived a merit pay increase suffered an adverse employment action and stating that "an employer cannot undo the harm its actions have caused, and thereby avoid liability, simply by attempting to make the employee whole retroactively").

Additionally, constructive discharge due to "an official act reflected in company records" such as "a reduction in compensation" may also constitute an adverse employment action under certain circumstances. *See Penn. State Police v. Suders*, 542 U.S. 129, 134, 148 (2004) (acknowledging that "an extreme cut in pay" may provide the basis for alleging constructive discharge). Construed liberally, Horace's amended complaint alleged that like other black ARIA employees, he had to voluntarily resign because ARIA repeatedly refused to fix his pay rate when he brought it to management's attention and instead falsely told him his pay rate was correct.  Thus, Horace has alleged two facially plausible adverse employment actions.

Further, Horace's amended complaint alleged that only black ARIA employees had their rate of pay changed and lowered multiple times and without notice, and it identified a "non-black" comparator, Betsy Galicia, whose rate of pay was never changed while she worked at ARIA.  At the pleading stage, Horace was not required to allege facts showing that Galicia was similarly situated in all material respects. *See Surtain*, 789 F.3d at 1246.  Indeed, this Court has observed that a "plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case," even at

later stages of the litigation. *Tynes v. Fla. Dep't of Juv. Justice*, 88 F.4th 939, 946-47 (11th Cir. 2023) (affirming denial of motion for judgment as a matter of law based on evidence of comparator employees who were not similarly situated in all material respects).

Nonetheless, in an email attached to his amended complaint, Horace advised the state agency's manager investigating his race discrimination charge that he and Galicia had the same title, behavior health technician. Further, in his amended complaint, Horace alleged, albeit with respect to his Title VII gender discrimination claim, that he complained to the lead technician, Faye, about the difference between his and Galicia's pay. Thus, at a minimum, it appears Horace and Galicia held the same position and perhaps had the same supervisor.

Even if the factual allegations in Horace's amended complaint do not allege "a classic *McDonnell Douglas* prima facie case" of race discrimination, they are adequate to "plausibly suggest that [Horace] suffered an adverse employment action due to intentional racial discrimination." *See Surtain*, 789 F.3d at 1246. Accordingly, Horace's Title VII and FCRA race discrimination claims are plausible on their face and should not have been dismissed. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

## IV. CONCLUSION

In sum, we affirm the district court's dismissal of Horace's gender discrimination claims in Counts 2 and 4 with prejudice. We

16              Opinion of the Court              23-12414

reverse the district court's dismissal of Horace's race discrimination claims in Counts 1 and 3 and remand for further proceedings.[4]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[4] In its appeal brief, ARIA argues that we lack appellate jurisdiction because Horace's appeal was untimely. This Court already rejected this argument when it denied ARIA's motion to dismiss the appeal.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 19, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  23-12414-DD
Case Style:  Andrew Horace v. ARIA
District Court Docket No:  9:22-cv-81766-AMC

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered
today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP
41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time
for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise
provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in
the clerk's office within the time specified in the rules. **A petition for rehearing must include
a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th
Cir. R. 35-5(k) and 40-1.

Costs
Each party to bear its own costs.

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the
Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39
and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any
objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming
compensation via the eVoucher system no later than 45 days after issuance of the mandate or
the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers
General Information:     404-335-6100     Attorney Admissions:        404-335-6122
Case Administration:    404-335-6135     Capital Cases:              404-335-6200
CM/ECF Help Desk:       404-335-6125     Cases Set for Oral Argument: 404-335-6141

OPIN-1 Ntc of Issuance of Opinion